1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 14-CV-03022 (VEB)

DALE ALDERMAN,

                    Plaintiff,                              DECISION AND ORDER

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

## I. INTRODUCTION

In September of 2010, Plaintiff Dale Alderman applied for supplemental security income ("SSI") benefits under the Social Security Act.  The Commissioner of Social Security denied the application.

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 8).

On October 30, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits on September 27, 2010. (T at 144-50).[1] The application was denied initially and on reconsideration and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On September 18, 2012, a hearing was held before ALJ Kimberly Boyce. (T at 32). Plaintiff appeared with his attorney and testified. (T at 40-53). The ALJ also received testimony from Trevor Duncan, a vocational expert. (T at 53-57).

On October 10, 2012, ALJ Boyce issued a written decision denying the application for benefits and finding that Plaintiff was not disabled within the

---

[1] Citations to ("T") refer to the administrative record at Docket No. 12.

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

meaning of the Social Security Act. (T at 16-31). The ALJ's decision became the Commissioner's final decision on February 5, 2014, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On February 26, 2014, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on May 2, 2014. (Docket No. 11).

Plaintiff filed a motion for summary judgment on October 17, 2014. (Docket No. 15). The Commissioner moved for summary judgment on December 1, 2014. (Docket No. 21). Plaintiff filed a reply memorandum of law on December 15, 2014. (Docket No. 25).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further proceedings.

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

# III. DISCUSSION

**A.     Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

4

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

## C.    Commissioner's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 27, 2010, the alleged onset date. (T at 21). The ALJ determined that Plaintiff's hypertension, chronic obstructive pulmonary disease, and degenerative disc disease were "severe" impairments under the Act. (Tr. 21-22).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 22).  The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 416.967 (b). The ALJ found that Plaintiff could not climb ladders, ropes, and scaffold, and was limited to occasional stair climbing and stooping. (T at 22-25).

The ALJ concluded that Plaintiff could not perform any past relevant work. (T at 25). However, considering Plaintiff's age (51 on the alleged onset date), education (high school), work experience, and RFC (light work), the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 26-27).

As such, the ALJ concluded that Plaintiff had not been disabled, as defined under the Act, from September 27, 2010 (the alleged onset date), through October 10, 2012 (the date of the ALJ's decision) and was therefore not entitled to benefits.

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

1    (Tr. 27).   As noted above, the ALJ's decision became the Commissioner's final

2    decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

3    **D.     Plaintiff's Arguments**

4          Plaintiff contends that the Commissioner's decision should be reversed.  He

5    offers five (5) principal arguments in support of this position.  First, Plaintiff argues

6    that the ALJ erred by finding that his heart condition was not a severe impairment.

7    Second, Plaintiff contends the ALJ committed reversible error by discounting the

8    opinion of Dr. Fady Sabry, a treating physician.   Third, he asserts that the ALJ

9    improperly rejected other medical opinions of record.   Fourth, Plaintiff challenges

10   the ALJ's credibility determination.   Fifth, he contends that the ALJ's step five

11   analysis was flawed.  This Court will address each argument in turn.

12          **1.          Step Two Severity Analysis**

13         At step two of the sequential evaluation process, the ALJ must determine

14   whether the claimant has a "severe" impairment. See 20 C.F.R. §§ 404.1520(c),

15   416.920(c).   The fact that a claimant has been diagnosed with and treated for a

16   medically determinable impairment does not necessarily mean the impairment is

17   "severe," as defined by the Social Security Regulations. *See, e.g.*, *Fair v. Bowen*,

18   885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir.

19   1985). To establish severity, the evidence must show the diagnosed impairment

20

9

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

significantly limits a claimant's physical or mental ability to do basic work activities for at least 12 consecutive months. 20 C.F.R. § 416.920(c).

The claimant bears the burden of proof at this stage and the "severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." SSR 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situation." *Id.*

In the present case, Plaintiff had aortic porcine valve replacement valve surgery in 1991. (T at 418).  In 1998, the porcine valve was replaced in a second surgery. (T at 418).   As noted above, the ALJ determined that Plaintiff's hypertension, chronic obstructive pulmonary disease, and degenerative disc disease were "severe" impairments under the Act. (Tr. 21-22). However, the ALJ concluded that Plaintiff's aortic valve replacement was not a severe impairment. (T at 22).

The ALJ committed reversible error.  The step two analysis is a screening device designed to dispose of *de minimis* complaints. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "[A]n impairment is found not severe . . . when medical evidence establishes only a slight abnormality or a combination of slight

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303 (9th Cir. 1988) (quoting SSR 85-28).

Here, two treating physicians and a treating provider assessed significant, long-term limitations arising from Plaintiff's aortic value replacements.

In August of 2003, Dr. V. Shad, a treating physician, opined that Plaintiff had a "lifelong" limitation to sedentary work as a result of his heart condition. (T at 519-20). In July of 2007, Dr. Fady Sabry, another treating physician, completed a physical evaluation, in which he opined that Plaintiff had moderate limitation (defined as "significant interference") with regard to all basic work-related activities as a result of his heart condition. (T at 548). Dr. Sabry concluded that Plaintiff was limited to sedentary work and that this restriction would last at least 12 months. (T at 548-49). Dr. Sabry reiterated these findings in an evaluation conducted in January of 2008. (T at 554-55). In December of 2008, Dr. Sabry opined that Plaintiff could not even perform sedentary work and characterized his overall work level as "severely limited." (T at 574).

In October of 2009, Kelli Campbell, a nurse practitioner working in collaboration with Dr. Sabry, noted Plaintiff's diagnosis of chronic obstructive pulmonary disorder ("COPD"), chronic back pain, and aortic value disorder. (T at

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

576).  Ms. Campbell opined that Plaintiff was limited to sedentary work and that the limitations were permanent. (T at 577).  In September of 2011, Dr. Sabry noted that Plaintiff had "multiple medical problems," which would require him to lie down for 15-30 minutes during the day due to shortness of breath and which would likely cause him to miss 4 or more days per month of work. (T at 416).

In addition, Dr. Robert Hoskins, a non-examining State Agency review consultant, identified Plaintiff's heart condition as a severe impairment. (T at 75).

The ALJ did not address any of these opinions in her step two analysis. (T at 21).  In fact, the step two analysis of Plaintiff's aortic value replacements is limited to a single paragraph, consisting of three (3) sentences. (T at 22).  In sum, the ALJ found that the heart condition was not a severe impairment because it did not significantly restrict Plaintiff's ability to do basic work activities.  The only evidence cited in support of this proposition was that Plaintiff "performs activities of daily living despite his heart valve replacement." (T at 22).

This analysis is insufficient.  First, Plaintiff's activities of daily living, without more, do not establish that his heart condition has no more than a minimal effect on his ability to perform basic work activities.  Plaintiff performs some child care activities, prepares simple meals, engages in basic household chores and yard work, and spends most days watching television, reading, and listening to music. (T at 48,

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

50, 172, 188, 190).  These activities are not a sufficient basis on which to conclude that Plaintiff's heart condition was a non-severe impairment.

"The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

"The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons..., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)).

In addition, and more importantly, the ALJ was obliged (and failed) to address all of the pertinent medical evidence, including opinions from treating providers, to the effect that Plaintiff was significantly limited by his heart condition.

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012.

As noted above, Dr. Shad and Dr. Sabry, both treating physicians, found significant work-related limitations arising from Plaintiff's heart impairment. (T at 519-20, 548-49, 554, 574). The ALJ did not expressly address these opinions in the

step two analysis.  This Court is mindful that these assessments were made before the alleged onset date.[2]  In her decision (albeit not in the step two section), the ALJ made general reference to the fact that "[s]ignificant parts of the medical evidence [were] dated well before" the alleged onset date. (T at 23).  However, this general reference was not a sufficient analysis of the treating physicians' opinions.

"While evidence pre-dating a claimant's alleged onset date may be of limited relevance in determining whether that claimant is disabled after his alleged onset date, such evidence is not automatically irrelevant to determining disability during the period at issue." *Manteau v. Colvin*, No. 12-1153, 2013 U.S. Dist. LEXIS 49266, 2013 WL 1390018, at *4 (C.D. Cal. April 4, 2013). Moreover, a two-time heart valve replacement has an element of seriousness and permanency to it that suggests a long-term, persistent problem clearly counseled by Claimant's doctors. The Commissioner has a duty to develop the claimant's complete medical history for at least twelve months preceding the month in which the application is filed "unless

---

[2] In the original application, Plaintiff alleged an onset date of August 15, 1997. (T at 144).  During the administrative hearing, his counsel conceded that the relevant alleged onset date was, for practical purposes, September 27, 2010, the protective filing date. (T at 35-36).  (SSI benefits are not awarded retroactively.  As such, as a practical matter, the earliest disability date that may be claimed for purposes of SSI benefits is the protective filing date of a claimant's application. *See* 20 C.F.R. § 416.501).  Although September 27, 2010 is therefore the legally relevant onset date, it is not logically inconsistent for Plaintiff to point to evidence that he had a permanently disabling condition that arose prior to that date.

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

1   there is a reason to believe that development of an earlier period is necessary." 20

2   C.F.R. § 416.912(d) "This duty exists even when the claimant is represented by

3   counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

4         Here, both Dr. Shad and Dr. Sabry assessed long-term (indeed, permanent)

5   limitations related to Plaintiff's heart condition.  At a minimum, consideration (and

6   explicit discussion) of this evidence was necessary prior to reaching the conclusion

7   that Plaintiff's heart condition imposed no more than a minimal effect on his ability

8   to perform basic work activities.  Moreover, the ALJ found the assessment of Dr.

9   Hoskins (the non-examining review consultant) "generally accurate" (T at 25), but

10  did not reconcile her step two finding with Dr. Hoskins's conclusion that Plaintiff's

11  heart condition was a severe impairment. (T at 75).

12        For the foregoing reasons, this Court finds that a remand is necessary for the

13  ALJ to reconsider the step two analysis and, in particular, discuss what weight

14  should be afforded to the evidence related to Plaintiff's heart condition.  Although

15  some of that evidence pre-dated the protective filing date, it referenced a long-term

16  condition and should have been addressed.

17        **2.    Treating Physician's Opinion**

18        In October of 2010, Dr. Sabry, a treating physician, opined that Plaintiff could

19  stand for 3-4 hours in an 8-hour work day, sit for 4 hours in an 8-hour work day, and

20

lift 10 pounds occasionally. (T at 380).  In June of 2011, he completed an assessment indicating that Plaintiff's condition was deteriorating and that he could only stand for 1 hour in an 8-hour workday, sit for 4 hours in an 8-hour workday, and could lift 10 pounds occasionally. (T at 641).  In September of 2011, Dr. Sabry noted that Plaintiff had "multiple medical problems," which would require him to lie down for 15-30 minutes during the day due to shortness of breath and which would likely cause him to miss 4 or more days per month of work. (T at 416).

The ALJ discounted the September 2011 report, but made no reference to the earlier opinions. (T at 25).  The ALJ found Dr. Sabry's September 2011 opinion inconsistent with the medical evidence, but it is not clear whether (or how) the ALJ reconciled this finding with the evidence related to Plaintiff's heart condition (discussed above). Further, Dr. Sabry's clinical notes (T at 625, 629) were consistent with his findings and the opinions provided by Dr. Shad and Ms. Campbell.   The ALJ neglected to discuss this fact and (as noted above) did not address Dr. Sabry's earlier assessments.

In addition, the ALJ described Dr. Sabry's findings as "grossly exaggerate[d]" and noted that the September 2011 assessment was made in the context of an evaluation submitted to the State Department of Social and Health Services. (T at 25).  However, the "purpose for which medical reports are obtained does not provide

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

a legitimate basis for rejecting them" unless there is evidence demonstrating impropriety, and the ALJ identified no evidence of any impropriety by Dr. Sabry. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995); *see also Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998).

The ALJ afforded greater weight to the opinions of several non-treating physicians (Dr. Rode, Dr. Dove, and Dr. Hoskins).  (T at 25).  Dr. Stephen Rode conducted a consultative examination in April of 2011.  He opined that Plaintiff could stand/walk for 6-8 hours at one time without interruption, sit for 6-8 hours at one time without interruption, and lift 50 pounds occasionally and 25 pounds frequently. (T at 411).  However, Dr. Rode's report contained a list of medical reports reviewed (T at 407), which did not include the assessments discussed above concerning Plaintiff's heart condition.   In addition, Dr. Rode's opinion was formulated prior to Dr. Sabry's June 2011 assessment that Plaintiff's condition was "deteriorating."[3]

---

[3] This case presents an odd scenario in which there is evidence of a permanent, significant impairment, although much of that evidence pre-dates the alleged onset date.  Then, there are medical opinions (Dr. Hoskins, Dr. Rode) suggesting that Plaintiff can engage in fairly strenuous physical activity.  One explanation might be medical improvement, but that is contradicted by Dr. Sabry's conclusion that Plaintiff was "deteriorating." As explained further in Section D below, this conflicting evidence must be reviewed and reconciled on remand.

18

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

Dr. Hoskins was a non-examining review consultant, who opined that Plaintiff could stand/walk for about 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and lift 10 pounds frequently and 20 pounds occasionally. (T at 76). However, the opinion of a non-examining, State Agency physician does not, without more, justify the rejection of an examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9ᵗʰ Cir. 1995)(citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)). The rejection of an examining physician opinion based on the testimony of a non-examining medical consultant may be proper, but only where there are sufficient reasons to reject the examining physician opinion independent of the non-examining physician's opinion. *See e.g., Lester*, 81 F.3d at 831; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).   Further, as noted above, Dr. Hoskins found Plaintiff's heart condition to be a severe impairment (T at 75), a finding the ALJ ignored with regard to the step two analysis.

In a June 2012 treatment note, Dr. Phillip Dove, a treating physician, described Plaintiff's hypertension as "improving" with medication. (T at 673).  He recommended weight loss and smoking cessation. (T at 676).  However, Dr. Dove made no functional limitation findings and, thus, his opinion cannot be cited in support of the ALJ's decision.

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

In light of the foregoing, this Court finds the ALJ's decision to discount Dr. Sabry's opinions from the relevant time period flawed and not supported by substantial evidence.

### 3.    Dr. Dalton's Opinion

In October of 2010, Dr. J. Dalton reviewed Plaintiff's records and approved an award of state disability benefits (known as "GAX") due to episodes of fatigue related to his aortic valve replacement. Dr. Dalton opined that Plaintiff was limited to sedentary work, which (given his age) rendered him disabled under the Social Security disability standards. (T at 620). The ALJ dismissed this opinion, without any detailed discussion, on the grounds that it was inadequately supported. (T at 25). However, Dr. Dalton's conclusion was consistent with much of the evidence outlined above (including, in particular, the opinions of Dr. Shad, Dr. Sabry, and Ms. Campbell). Because the ALJ failed to provide a sufficient discussion of that evidence, it is not clear how she reconciled it with the decision to discount Dr. Dalton's assessment. This was further error on the part of the ALJ.

### 4.    Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects were not credible to the extent alleged. (T at 23).  The ALJ's decision was flawed.

For example, the ALJ cited Plaintiff's acceptance of TANF (Temporary Assistance of Needy Families) benefits as evidence of dishonesty, on the theory that the benefits were paid because Plaintiff claimed to be providing childcare during a period when he claimed he could not work. (T at 23).  Plaintiff disputes this understanding of TANF benefits, arguing that, under certain circumstances, such benefits can be awarded to disabled caregivers.  The Commissioner does not dispute this argument and the ALJ did not ask Plaintiff for any details regarding his benefit eligibility. (T at 44).  Further, Plaintiff testified that he received TANF benefits in

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

2000 or 2001. (T at 44).  The ALJ was quick to dismiss evidence that pre-dated the alleged onset date when it supported Plaintiff's claim (i.e. the evidence outlined above concerning Plaintiff's heart condition), but then used such archival evidence to discount his credibility.

In addition, the ALJ's decision to discount Plaintiff's credibility is impacted by the failure to conduct a proper step two analysis and give appropriate consideration to Dr. Sabry's opinions.  The ALJ cited Plaintiff's "long history" of a "lack of motivation to work" (T at 25), but then did not reconcile this finding with, for example, Dr. Shad's conclusion that Plaintiff had a "lifelong" work-related limitation as a result of his heart condition. (T at 519-20).  The ALJ's credibility assessment must therefore likewise be revisited on remand.

**5.      Step Five Analysis**

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995). The Commissioner may

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995).

The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.1987). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the ALJ's step five analysis was based on testimony from Trevor Duncan, a vocational expert. (T at 26). However, the hypotheticals presented to Mr. Duncan were incomplete. Dr. Hoskins opined that Plaintiff needed to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (T at 77). The ALJ assigned significant weight to Dr. Hoskins's opinion (T at 24), but did not include this limitation in the RFC determination or the hypothetical. It is not clear why the ALJ omitted this limitation from the hypothetical, especially since she found Plaintiff's COPD to be a severe impairment. (T at 21-22).

In addition, Dr. Sabry opined that Plaintiff's "multiple medical problems" would likely cause him to miss 4 or more days per month of work. (T at 416). The

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

vocational expert testified that this degree of absenteeism would preclude employment. (T at 55-56). If the ALJ had properly considered and rejected Dr. Sabry's opinion (which included that limitation), this response would not be problematic (because the ALJ would not have been obliged to include that limitation). However, as set forth above, the ALJ's decision to discount Dr. Sabry's opinion was not supported by substantial evidence and, thus, the step five analysis is likewise flawed.

**D.    Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, this Court finds that a remand for further proceedings is warranted. Much of the evidence regarding Plaintiff's heart condition does pre-date the protective filing date and there is arguably some evidence of improvement. The ALJ's credibility analysis was flawed, but there were legitimate reasons for questioning Plaintiff's credibility (including a lengthy criminal history). Dr. Stephen

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB

Rode, the consultative examiner, rendered an opinion generally consistent with the ALJ's RFC determination, albeit without a fully developed medical record.  As such, this Court finds that a remand for further proceedings is warranted.  The ALJ should revisit the step two findings concerning Plaintiff's heart condition, reconsider Dr. Sabry's opinions, and then review the credibility and step five analysis.

## IV. ORDERS

IT IS THEREFORE ORDERED that:

Plaintiff's motion for summary judgment, Docket No.  15, is GRANTED.

The Commissioner's motion for summary judgment, Docket No. 21, is DENIED.

This case is REMANDED for further proceedings.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of Plaintiff, and close this case.

DATED this 14th day of January, 2015.


/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – ALDERMAN v COLVIN 14-CV-03022-VEB